UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MUTIZWA FINLEY,

        Petitioner,

                                   CASE NO. 06-CV-12683
v.                               HONORABLE DENISE PAGE HOOD

JAN TROMBLEY,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**I.    Introduction**

    Michigan prisoner Mutizwa Finley ("Petitioner") has filed a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his

constitutional rights. Petitioner was convicted of possession with intent to deliver more than 650

grams of cocaine, Mich. Comp. L. § 333.7401(2)(a)(i), maintaining a drug house, Mich. Comp.

L. § 333.7405(d), possession of marijuana, Mich. Comp. L. § 333.7403(2)(d), felon in possession

of a firearm, Mich. Comp. L. § 750.224f, and possession of a firearm during the commission of a

felony, Mich. Comp. L. § 750.227b, following a jury trial in the Genesee County Circuit Court.

He was sentenced to life imprisonment on the cocaine conviction, 41 days on the drug house and

marijuana convictions (credited for time served), a concurrent term of two to seven and one-half

years imprisonment on the felon in possession conviction, and a consecutive term of two years on

the felony firearm conviction in 2003.

1

In his pleadings, Petitioner raises claims concerning the racial composition of the jury, the effectiveness of trial counsel, the admission of certain evidence, prosecutorial misconduct, and the state courts' failure to conduct an evidentiary hearing on his claims. For the reasons stated herein, the Court denies the petition for writ of habeas corpus.

## II.    Facts and Procedural History

Petitioner's convictions arise from a search of his residence in Burton, Michigan on January 3, 2002. The Michigan Court of Appeals set forth the basic facts, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> After a confidential informant made a controlled buy of cocaine at defendant's house on January 2, 2002, narcotics officers obtained a search warrant and searched defendant's house on January 3, 2002. The officers found more than 800 grams of cocaine, a small amount of marijuana, eleven firearms, scales, packing and cutting materials, written records of drug transactions, a bulletproof vest, a glass cooking jar that could be used for converting powder cocaine to crack cocaine, expensive jewelry and receipts showing other jewelry purchases, and documents linking defendant to the ownership and possession of the house. Defendant challenged the validity of the search warrant in a pretrial motion to suppress, which the trial court denied.

> Although defendant had not been seen with any of the accoutrements of drug dealing found in his house, and the only physical evidence connecting defendant to the items was his fingerprint on the glass jar, the prosecutor argued at trial that defendant constructively possessed the drugs, firearms, and related items found in the house. Defense counsel attempted to undermine this theory by emphasizing the lack of direct evidence of a nexus between defendant and the items, and by suggesting that the items and equipment found in the house belonged to another person, such as defendant's domestic partner or a hired cleaner.

*People v. Finley*, No. 248960, 2004 WL 2381875, *1 (Mich. Ct. App. Oct. 21, 2004) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal as of right with the

Michigan Court of Appeals raising several claims of error, including those raised in the present habeas petition. The Michigan Court of Appeals affirmed Petitioner's convictions. *Id.* Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Finley*, 472 Mich. 938, 698 N.W.2d 394 (2005).

Petitioner, through counsel, thereafter submitted his federal habeas petition asserting the following claims:

I.     The State's appellate court based its decision on an unreasonable determination of the facts in light of the evidence presented during voir dire. Its decision was also an unreasonable application of the law to the facts and it was contrary to the holding in *Batson v. Kentucky*.

II.    Petitioner was denied the effective assistance of counsel in the following ways:

    a.    Where appellant was being prosecuted by the Genesee County Prosecutor's Office for a drug crime and trial counsel was also being prosecuted for a drug crime by that same office, there was an actual conflict of interest.

    b.    Counsel failed to stipulate to the predicate felony in the felon in possession charge thus allowing evidence that was more prejudicial than probative to be placed before the jury.

    c.    Trial counsel failed to move to redact portion of the document entitled: "Judgment of Conviction and Sentence" concerning the predicate felony because that document showed that other counts were dismissed against the defendant, there was a victim, and the defendant was ordered to undergo treatment.

    d.    Trial counsel failed to move *in limine* to exclude evidence that two of the guns found in the Christner Street home were stolen and failed to move to strike evidence that a sawed off shotgun should have been registered with the federal government.

    e.    Trial counsel failed to move to sever the count charging felon in possession from the rest of the counts.

f. Trial counsel was ineffective for failing to correct the prosecutor's misstatement and the court's misunderstanding concerning the range of punishment under the statute.

g. Trial counsel failed to object to prosecutorial misconduct.

III. The following state evidentiary rulings denied fundamental fairness to Petitioner:

a. The court found harmless error where the trial court allowed the prosecution to offer testimony of surveillance officers concerning the anonymous informant's activities occurring at the home on January 2, while denying the defense's request that the court order the prosecution to produce the informant.

b. The court erred in finding harmless the admission of evidence that a judge signed the search warrant and in permitting testimony as to why a confidential informant would want to remain anonymous.

c. The court erred when it overruled the defendant's objection to the admission of the police tabulation sheet into evidence.

IV. The prosecutor improperly vouched for the credibility of its fingerprint expert.

Respondent has filed an answer to the petition asserting that it should be denied for lack of merit.

Petitioner has filed a reply to that answer.

## III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28

U.S.C. § 2241 *et seq.*, governs this case because Petitioner filed his petition after the AEDPA's

effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412;

5

*see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.     Analysis**

A.     Jury Composition Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecutor improperly excluded two African-Americans from his jury on the basis of their race in violation of his constitutional rights. Respondent contends that this claim lacks merit.

Although a criminal defendant has no right to have a member of a particular race on his jury, he does have the right to be tried by a jury whose members are selected by non-discriminatory criteria. *See Powers v. Ohio*, 499 U.S. 400, 404 (1991); *Taylor v. Louisiana*, 419 U.S. 522, 527-28 (1975). The Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from challenging potential jurors solely on account of their race. *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986); *Lancaster v. Adams*, 324 F.3d 423, 432-33 (6th Cir. 2003).

6

To established a prima facie case of purposeful discrimination in the selection of a *petit* jury solely based upon the prosecutor's exercise of peremptory challenges, a defendant must show that he is a member of a cognizable racial group and that the prosecutor used peremptory challenges to remove members of the defendant's race from the jury. The defendant must also show that other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors from the jury on account of their race. Relevant circumstances include the pattern of strikes and the prosecutor's questions and statements. *Batson*, 476 U.S. at 96-97.

Once the defendant makes a *prima facie* showing, the burden then shifts to the prosecutor to offer a "race neutral explanation" for challenging the jurors. *Id.* at 97. A "race neutral" explanation is one based upon something other than the juror's race. The issue is the facial validity of the prosecutor's explanation. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York,* 500 U.S. 352, 360 (1991). The ultimate question of discriminatory intent concerns an evaluation of the prosecutor's credibility. Such a decision represents a factual finding accorded great deference on appeal, which will not be overturned unless clearly erroneous. *See Miller-El v. Cockrell*, 537 U.S. 322, 339-40 (2003). The defendant bears the final burden of proving purposeful discrimination. *See Batson*, 476 U.S. at 98.

The Michigan Court of Appeals denied relief on this claim, stating:

Before the trial court denied defendant's Batson challenge, the prosecutor had exercised two peremptory challenges to excuse two African-American prospective jurors, Ammon Broden and Sharon Robinson.FN1 The prosecutor explained that she struck Broden because he was young, presumably had little life experience, and exhibited a negative attitude toward the courtroom

7

proceedings. The prosecutor also was concerned that his first name might give him a sense of sympathy or connection with defendant. The prosecutor explained that she struck Robinson out of concern that her work as a child associate in an intermediate school district might make her sympathetic to people who were in trouble. Defendant maintains that the prosecutor's reasons were pretextual because (1) the prosecutor's explanation with regard to Robinson was disingenuous, inasmuch as Robinson's answers suggested that she would be favorable to the prosecution, (2) there was no linguistic connection between defendant's and Broden's first names, and (3) there was no legitimate reason for favoring older jurors with more "life experience."

FN1. The trial court apparently presumed there was an established pattern of strikes made in relation to the racial identities of other members of the jury pool. The prosecution, at trial and on appeal, does not challenge the existence of an established pattern of strikes made in relation to the racial identities of other members of the jury pool. We do not address whether there was an established pattern of strikes, but rather we assume, for purposes of this opinion, that such a pattern was established.

In *McCurdy v. Montgomery Co, Ohio*, 240 F3d 512, 521 (CA 6, 2001), the Sixth Circuit addressed the degree of scrutiny required when the prosecutor's proffered reasons are based on subjective perceptions or hunches. The Sixth Circuit acknowledged that body language, demeanor, passivity, inattentiveness, or inability to relate to other jurors are valid, race-neutral explanations for exercising a peremptory challenge, but stated that the trial court must explicitly adjudicate the prosecutor's race-neutral explanations. The federal court explained:

The need for an explicit, on-the-record analysis of each of the elements of a Batson challenge is especially important when the purported race-neutral justification is predicated on subjective explanations like body language or demeanor.... Because the primary defense to pretext based violations of Batson is the district court's ability to assess the credibility of an attorney's representations, it is critical that the district court independently assess the proffered justifications. [ *Id*. (citations omitted).]

Here, the prosecutor gave racially-neutral explanations based on her subjective perceptions about Broden and Robinson. The trial court scrutinized these explanations by extensively assessing the prosecutor's perceptions and comparing them to its own perceptions of Broden and Robinson. The trial court agreed that Broden was unlikely to be a conscientious juror because he exhibited a hostile attitude, and was young and inexperienced. Defendant argues that the prosecutor could not establish any similarity between Broden's and defendant's given names,

because they are linguistically and etymologically unrelated. However, defendant's emphasis on linguistics and etymology is misplaced because the prosecutor is not restricted to factually sound reasons. The court agreed that Broden's and defendant's first names, whatever their origins, "conjure up" the impression that both were names of similar origin that might invoke Broden's sympathy. We cannot conclude that the trial court clearly erred in determining that these reasons, though subjective and not empirically verifiable, were genuine and sincere. *See also Partida v. State*, 133 SW3d 738, 742 (Tex App, 2003) (the trial court did not err in accepting the prosecutor's race-neutral explanation that a juror was struck because he had a shaved head and wore an earring, which caused him to appear anti-establishment, and unsympathetic to the government).

The trial court acknowledged that it had formed a different perception of Robinson, and that it was surprised when the prosecutor struck her. However, the trial court carefully considered the prosecutor's explanation, and determined that it too was genuine, and not pretextual. Thus, with both Broden and Robinson, the trial court properly scrutinized the prosecutor's subjective explanations, and found that the prosecutor was credible and sincere. We find no reason for not deferring to the trial court's credibility assessments.

Defendant contends that the prosecutor committed an age-based Batson violation by considering Broden's age as a factor. Because defendant fails to cite any authority for the proposition that Batson applies to aged-based exercises of peremptory challenges, we deem this issue waived. *People v. Weathersby*, 204 Mich App 98, 113; 514 NW2d 493 (1994). Furthermore, we note that several jurisdictions have accepted youthfulness and inexperience as genuine, race-neutral factors for striking jurors. *See State v. Payne*, 943 SW2d 338 (Mo App, 1997) (no Batson violation where the prosecutor exercised a peremptory challenge against a young juror based on a perception that she would sympathize with the youthful defendant, and not the elderly prosecution witness); *Ealoms v. State*, 983 SW2d 853, 856-857 (Tex App, 1998) ("Youth and employment (or lack thereof) are acceptable race-neutral explanations for striking a prospective juror.").

*Finley*, 2004 WL 2381875 at *1-3.

Having reviewed the state court record, this Court finds that the Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts. The record does not reveal evidence of purposeful discrimination by the prosecution in exercising the contested peremptory challenges.

The mere fact that the prosecution exercised peremptory challenges to excuse two African-American venire persons from the jury, standing alone, is insufficient to establish a prima facie case of discrimination. *See United States v. Sangineto-Miranda*, 859 F.2d 1501, 1521 (6th Cir. 1988); *see also Williams v. Woodford*, 306 F.3d 665, 681 (9th Cir. 2002); *Anderson v. Cowan*, 227 F.3d 893, 901-02 (7th Cir. 2000) (fact that prosecution used peremptory challenges to exclude two African-American women from jury, without more, was insufficient to raise inference of discrimination). A court considering a *Batson* challenge must look to all the relevant circumstances, including the number of strikes against jurors of a particular racial group and the prosecution's questions and comments during voir dire. *See Batson*, 476 U.S. at 97. A court may also consider factors such as the racial composition of the jury venire and the final jury panel, the number of peremptory challenges and their manner of execution, and the race of all jurors who are excused from service (whether for cause or peremptorily). *See Sangineto-Miranda*, 859 U.S. at 1520.

In this case, Petitioner points to no facts, other than the striking of two African-Americans, to support his *Batson* claim. The Court's review of the record demonstrates that the relevant circumstances negate an inference of discrimination. The prosecution did not question any of the jurors in an unusual, distinct, or discriminatory manner nor did the prosecution make any comments reflecting bias or discriminatory intent. The prosecution used peremptory challenges to excuse white jurors, as well as the two jurors at issue. Several jurors were also excused for cause. Furthermore, the voir dire transcript indicates that the prosecution had sufficient, non-discriminatory reasons to excuse the jurors in question - their youthfulness and lack of life experience, Ms. Robinson's school employment, and Mr. Broden's distinctive name

10

and demeanor during the voir dire. Additionally, it appears that one African-American remained on the jury and was not challenged by the prosecutor, who had one peremptory challenge remaining. Given such circumstances, Petitioner has not shown that the prosecution unconstitutionally exercised peremptory challenges to excuse African-Americans from the jury. Habeas relief is not warranted on this claim.

      B.      Ineffective Assistance of Counsel Claims

Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective. Specifically, Petitioner claims that counsel had a conflict of interest, failed to stipulate to the felony underlying the felon in possession charge, failed to redact prejudicial information from the judgment for that prior felony, failed to move to exclude evidence that two recovered guns were stolen and that a sawed-off shotgun should have been registered, failed to seek severance of the felon in possession charge, failed to correct punishment information, and failed to object to prosecutorial misconduct. Respondent contends that these claims lack merit.

In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" to prove deficient performance. *Id.* at

11

690. A habeas court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

1.    Conflict of Interest

Petitioner asserts that trial counsel had an actual conflict of interest because counsel faced an unrelated drug charge while defending Petitioner on drug and weapons charges in the same county. A criminal defendant is entitled to the effective assistance of counsel free from conflict. *See Holloway v. Arkansas*, 435 U.S. 475, 483-84 (1978). To establish a conflict of interest leading to a presumption of prejudice, a petitioner must demonstrate that "counsel actively represented conflicting interests and that an actual conflict of interest adversely affected the lawyer's performance." *Strickland*, 466 U.S. at 392. The United States Court of Appeals for the Sixth Circuit has summarized the difference between the typical ineffective assistance of counsel claim and a conflict of interest claim as follows:

Conflict of interest cases involve a slightly different standard than that used in

12

traditional ineffectiveness claims. *See* [*Thomas v. Foltz,* 818 F.2d 476, 480 (1987).] Where there is conflict of interest, "counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties." *Strickland,* 466 U.S. at 692, 104 S. Ct. 2052. Thus, when an actual conflict of interest exists, prejudice is presumed. *See id.* Prejudice is presumed, however, "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' " *Id.* (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 345-50, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)). Thus, while the rule is rigid, it is not a *per se* rule. *See id.*

*United States v. Hall,* 200 F.3d 962, 965 (6th Cir. 2000).

In short, prejudice will be presumed upon a showing that a conflict existed which adversely affected counsel's performance. First, a petitioner must show that his attorney "actively represented conflicting interests." *Cuyler,* 446 U.S. at 350. "[I]f the conflict is as to a matter that is irrelevant or the conflict is merely hypothetical, there is no constitutional violation." *Moss v. United States,* 323 F.3d 445, 463-64 (6th Cir. 2003). A petitioner must point to specific instances in the record to suggest an actual conflict or impairment of his interests. *See Thomas v. Foltz,* 818 F.2d 476, 481 (6th Cir. 1987).

Once a conflict of interest is established, a petitioner must demonstrate that the conflict "actually affected the adequacy of [counsel's] representation." *Cuyler,* 466 U.S. at 349-50. The standard requires "a choice by counsel caused by the conflict of interest." *McFarland v. Yukins,* 356 F.3d 688, 706 (6th Cir. 2004).

> Although the choice caused by the conflict does not have to be prejudicial in the sense of causing the defendant to lose the case, . . . the reasonableness of counsel's choice can be relevant as a factor in proving the choice was caused by conflict. A defendant or habeas petitioner does not have to produce direct evidence, such as the lawyer's testimony, that the lawyer chose to do one thing in order to accommodate a client's interests. Causation can be proved circumstantially, through evidence that the lawyer did something detrimental or failed to do something advantageous to one client that protected another client's interests.

13

*Id.* The possible adverse affects from a conflict of interest may arise during trial or during pre-trial plea negotiations. *See, e.g., Quintero v. United States*, 33 F.3d 1133, 1136 (9th Cir. 1994).

The Supreme Court has applied the *Cuyler* standard to cases involving concurrent multiple representation, but has cautioned against applying it "unblinkingly" to other cases involving alleged conflicts of interest. *See Mickens v. Taylor*, 535 U.S. 162, 174-76 (2002). The Sixth Circuit has indicated that the *Cuyler* standard applies only to concurrent multiple representation since the Supreme Court has yet to extend it to other types of conflicts. *See Whiting v. Burt*, 395 U.S. 602, 618-19 (6th Cir. 2005) (presumed prejudice does not apply when counsel represents defendant at trial and on appeal); *Lordi v. Ishee*, 384 F.3d 189, 193 (6th Cir. 2004) (presumed prejudice standard does not apply to successive representation cases); *Smith v. Hofbauer*, 312 F.3d 809, 817 (6th Cir. 2002) (refusing to extend *Cuyler* to personal conflict of interest claim and indicating that it is limited to joint representation); *but cf. Rugiero v. United States*, 330 F. Supp. 2d 900, 906 (E.D. Mich. 2004) (applying *Cuyler* standard to case alleging personal interest conflict).

Citing *Cuyler*, the Michigan Court of Appeals denied relief on this issue, stating:

> Here, there is no reason to presume an actual conflict because defense counsel was being prosecuted by the Attorney General's office, not by the county prosecutor, and because defense counsel's case was before a district court, not a circuit court. Moreover, defendant has failed to cite any example of how defense counsel's own legal problems adversely affected his representation of defendant. Defendant claims that defense counsel improperly handled his remand for a preliminary examination to curry favor with the prosecutor. However, defendant does not state how the remand could have benefited him, and thus does not provide support for his claim. Therefore, defendant has not shown that his right to effective counsel was violated or that the trial court was obligated to *sua sponte* intervene.

*Finley*, 2004 WL 2381875 at *10.

14

This decision is not an unreasonable application of *Cuyler* or the facts. Petitioner has not shown that counsel operated under a conflict of interest which adversely affected his performance. Petitioner's drug and weapons charges and defense counsel's drug possession charge were unrelated. Although their cases arose in the same county, they were prosecuted by different legal authorities and were before different judges. The record fails to support Petitioner's claim that he and defense counsel had competing interests at stake. *See Smith v. Hofbauer*, 312 F.3d at 812-19 (upholding denial of habeas relief on conflict of interest claim where defense counsel was indicted on drug charges in the same county in which the defendant was being tried, but neither the judge nor the prosecutor were the same and the state court found no evidence to suggest that counsel had lessened his defense due to the pending felony charge).

While Petitioner asserts that counsel waived his (Petitioner's) preliminary examination to curry favor with the prosecution, he presents no evidence to support this claim. Counsel indicated on the record that he waived the examination because he thought that doing so would expedite the resolution of Petitioner's pending motions. Additionally, although counsel's crime occurred on November 12, 2002, a magistrate judge did not issue counsel's arrest warrant until February 3, 2003 – nearly two months after Petitioner waived his preliminary examination on December 17, 2002. Petitioner has not shown that defense counsel failed to take reasonable steps to defend him and to prepare for trial based upon counsel's own criminal proceedings. Although Petitioner claims that counsel should have provided better representation, he does not indicate what additional information counsel should have produced or what additional steps he should have taken which would have benefitted his defense or positively affected the outcome of trial. Conclusory allegations are insufficient to warrant habeas relief. *See, e.g., Workman v.*

*Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3rd Cir. 1991) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings). Petitioner has failed to establish that trial counsel operated under an actual conflict of interest which adversely affected his performance.

Furthermore, to the extent that the *Cuyler* standard is inapplicable to the case at hand, the Michigan Court of Appeals' decision is neither contrary to *Strickland* nor an unreasonable application thereof. As to counsel's handling of the preliminary examination, Petitioner has failed to show that counsel was deficient. Preliminary examination waivers are a common occurrence in state court and counsel may have reasonably decided to waive the examination to expedite Petitioner's case. More importantly, Petitioner has failed to show that he was prejudiced by counsel's conduct in waiving the exam given that he was convicted of the charged offenses at trial. With respect to counsel's general handling of the case, the record indicates that counsel filed pre-trial motions, was prepared for trial, and contested the prosecution's case in a reasonably competent manner. Petitioner has failed to establish that counsel's performance was deficient or that he was prejudiced by counsel's conduct, particularly given the significant evidence of guilt presented at trial. Habeas relief is not warranted on this claim.

### 2. Stipulation for Felon in Possession Charge

Petitioner next asserts that counsel was ineffective for failing to stipulate to the felon in possession charge. The Michigan Court of Appeals denied relief on this claim finding that counsel reasonably decided not to stipulate to the predicate felony in order to preclude the jury from speculating about the severity of the prior offense and to insinuate that Petitioner's

16

girlfriend actually committed the offense. *See Finley*, 2004 WL 2381875 at \*10-11.

This decision is neither contrary to *Strickland* nor an unreasonable application thereof. Counsel's strategy to allow the jury to hear evidence about the prior felony to alleviate speculation about the severity of the offense, to show that he successfully completed probation, and to imply that his girlfriend was the guilty party was reasonable. The fact that trial counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Petitioner has failed to establish that counsel was deficient. He has also not shown that he was prejudiced by counsel's conduct in this regard. Habeas relief is not warranted.

### 3. Redaction of Prior Felony Judgment

Petitioner also asserts that counsel was ineffective for failing to seek redaction of allegedly prejudicial information contained in the prior attempted carrying a concealed weapon felony judgment. The Michigan Court of Appeals concluded that the allowing the admission of the document, which showed that four unspecified counts were dismissed, that the probation requirements included treatment, and that restitution and crime victim fund payments were made, was neither objectively unreasonable nor outcome determinative. *See Finley*, 2004 WL 2381875 at \*11. This decision is neither contrary to *Strickland* nor an unreasonable application thereof. The document was not particularly damaging given that the offenses were unspecified and dismissed and given that Petitioner successfully completed his probation for that offense. Counsel may have reasonably determined that the information was not harmful and/or that redaction would have made the jury think that the defense was trying to hide something.

17

Petitioner has failed to establish that counsel erred or that he was prejudiced by counsel's conduct. Habeas relief is not warranted on this issue.

### 4. Severance of Felon in Possession Charge

Petitioner relatedly asserts that counsel was ineffective for failing to seek severance of the felon in possession charge. The Michigan Court of Appeals concluded that counsel was not ineffective in this regard because the charges were closely connected such that a motion to sever would not have succeeded. *See Finley*, 2004 WL 2381875 at p. 11. Given the state court's determination that a severance motion would have been unsuccessful, Petitioner cannot establish that counsel erred or that he was prejudiced by counsel's conduct. Defense counsel cannot be deemed deficient for failing to make a futile objection or motion. *See McQueen*, 99 F.3d at 1328. Habeas relief is not warranted on this claim.

### 5. Gun Evidence

Petitioner next alleges that counsel was ineffective for failing to object to a police officer's testimony that guns recovered from Petitioner's residence were either unregistered or stolen. The Michigan Court of Appeals concluded that counsel was not ineffective for failing to object to this testimony because the evidence was relevant to the maintaining a drug house and possession with intent to deliver cocaine charges. *See Finley*, 2004 WL 2381875 at p. 12. Given the state court's determination that the disputed gun evidence was relevant and admissible, Petitioner cannot establish that counsel erred or that he was prejudiced by counsel's failure to object to the police testimony. Defense counsel cannot be deemed deficient for failing to make a futile objection. *See McQueen*, 99 F.3d at 1328. Habeas relief is not warranted on this claim.

6. Range of Punishment Information

Petitioner also alleges that counsel was ineffective at sentencing for failing to correct information concerning the range of punishment for the possession with intent to deliver more than 650 grams of cocaine conviction. The Michigan Court of Appeals did not address this issue, nor has Respondent. Nonetheless, the Court concludes that Petitioner is not entitled to relief on this claim because he cannot establish that he was prejudiced by counsel's conduct. While the trial court's statements at sentencing regarding the mandatory minimum and maximum sentences are less than clear, the record reveals that the trial court stated the appropriate sentencing possibilities for this offense (a mandatory 20-year minimum and a maximum life sentence) at the time of Petitioner's arraignment. More importantly, the trial court denied that it was under a mistaken belief as to sentencing during a hearing on Petitioner's motion for new trial. Consequently, even if counsel erred in failing to clarify matters at sentencing, Petitioner cannot establish that he was prejudiced by counsel's conduct as the trial court confirmed its intent to sentence Petitioner to life imprisonment, a valid sentence under state law. *See* Mich. Comp. L. § 333.7401(2)(a)(I). Habeas relief is not warranted.

7. Prosecutorial Misconduct

Lastly, Petitioner claims that trial counsel was ineffective for failing to object to the prosecutor's alleged misconduct in vouching for the fingerprint expert, arguing that the stolen and unregistered firearms were evidence of guilt, and arguing that expenditures on luxury items were evidence of guilt. The Michigan Court of Appeals denied relief on this claim, finding that the prosecutor's arguments were proper comments on the evidence such that Petitioner could not establish that counsel erred or that he was prejudiced by counsel's conduct. *See Finley,*

19

2004 WL 2381875 at *12-13. This Court agrees. The prosecutor's arguments were based upon the evidence and reasonable inferences drawn from that evidence, and were appropriate. As noted, defense counsel cannot be deemed deficient for failing to make futile objections. *See* *McQueen*, 99 F.3d at 1328. Petitioner has failed to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on such a basis.

### C.    Evidentiary Claims

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in making certain evidentiary rulings. Specifically, Petitioner claims that the court erred in admitting testimony about the confidential informant's actions while denying the defense request to produce the informant, that the court erred in admitting evidence that a judge signed the search warrant and testimony regarding an informant's need to remain anonymous, and that the court erred in admitting a police tabulation sheet. Respondent contends that these claims are not cognizable upon habeas review and lack merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

### 1.    Confidential Informant

Petitioner asserts that the trial court erred in admitting police testimony about the confidential informant's controlled buy, but denying the defense request to produce the

20

informant. The prosecution admitted the drug buy testimony to demonstrate that the police had a valid warrant to subsequently search Petitioner's residence. On direct appeal before the Michigan Court of Appeals, Petitioner argued that the testimony regarding the January 2, 2002 drug buy was based on inadmissible hearsay and was not relevant. The Michigan Court of Appeals ruled that the informant's conduct was not nonverbal assertive conduct and did not constitute inadmissible hearsay under state evidentiary law. The Court of Appeals further ruled that the trial court erred in admitting the evidence under Michigan Rules of Evidence 403 and 404(b) on relevancy grounds, but concluded that any error in admitting the evidence was harmless given the overwhelming evidence of drug trafficking, arising from the January 3, 2002 search of the residence, presented at trial. *See Finley*, 2004 WL 2381875 at \*4-5.

To the extent that Petitioner challenges this decision under the Michigan Rules of Evidence, he merely alleges a violation of state law which does not entitle him to federal habeas relief. *See, e.g., Wheeler v. Jones*, 59 Fed. Appx. 23, 28 (6th Cir. 2003). State courts are the final arbiters of state law and federal habeas courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Furthermore, the Michigan Court of Appeals' determination that any error in admitting the evidence was harmless is neither contrary to Supreme Court precedent nor an unreasonable application thereof. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence

21

upon jury's verdict). Given the significant evidence of Petitioner's guilt presented at trial, namely the cocaine and related drug trafficking evidence seized during the January 3, 2002 search of the residence, any error in admitting testimony regarding the controlled drug buy did not have a substantial and injurious effect or influence on the jury's verdict.

Petitioner asserts that the admission of the police testimony describing the confidential informant's controlled drug buy violated his confrontation rights. Respondent contends that this claim is unexhausted. Petitioner states that he first raised this claim in a supplemental brief to the Michigan Supreme Court. The doctrine of exhaustion of state remedies requires state prisoners to properly present their claims to the state courts before raising their claims in a federal habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A) and (C); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The exhaustion requirement is satisfied if a prisoner invokes one complete round of the State's established appellate review process. *O'Sullivan*, 526 U.S. at 845; *see also Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). Submission of a claim to a state's highest court on discretionary review does not constitute "fair presentation" when such review is granted only upon "special and important reasons." *Castille v. Peoples*, 489 U.S. 346, 349 (1989). Nonetheless, this Court may address the substance of this claim despite the lack of exhaustion. *See* 28 U.S.C. § 2254(b)(2) (authorizing courts to deny a habeas petition on its merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Because the state courts have not addressed whether the alleged error constitutes a denial of Petitioner's confrontation rights, the deference due under 28 U.S.C. § 2254(d) does not apply, and habeas review of the claim is *de novo*. *See Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir.

2006) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), and citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)). Having undertaken the requisite review, the Court concludes that the trial court did not violate Petitioner's constitutional rights. The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. *See Davis v. Alaska*, 415 U.S. 308, 315 (1973). In *Crawford v. Washington*, 541 U.S. 36, 54 (2004), the United States Supreme Court held that the *testimonial* statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. Testimonial statements include preliminary hearing testimony, grand jury testimony, prior trial testimony, and statements made during police interrogations. *Crawford*, 541 U.S. at 54. They also include statements made by confidential informants. *See United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004). However, the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. *Id.* at 676. Additionally, the admission of testimony which does not reveal specific statement made by a confidential informant and merely provides background information concerning a police investigation does not violate the Confrontation Clause. *Id.* at 676-77.

In this case, the police officers described the confidential informant's actions during the controlled drug buy and recounted their own observations of the events. The officers did not reveal specific statements made by the confidential informant. Their testimony was intended to provide background information to explain the basis for the subsequent authorized police search of Petitioner's residence. Given such circumstances, Petitioner has not shown that the admission of the evidence concerning the controlled drug buy, without producing the

confidential informant, violated his confrontation rights or otherwise rendered his trial fundamentally unfair. *See, e.g., United States v. Sales*, 247 Fed. Appx. 730 (6th Cir. 2007) (non-disclosure of confidential informant's identity did not violate right of confrontation because testimony did not disclose informant's statements and merely provided background information). Habeas relief is not warranted.

## 2. Confidential Informant Anonymity and Signed Search Warrant

Petitioner next asserts that the trial court erred in admitting a police officer's testimony that he wanted to protect the confidential informant's anonymity and that a magistrate judge signed the January 3, 2002 search warrant. The Michigan Court of Appeals denied relief on this claim finding that the officer testified from his own knowledge about such matters and concluding that the search warrant testimony was not unduly prejudicial. *See Finley*, 2004 WL 2381875 at *5.

To the extent that Petitioner challenges this decision under the Michigan Rules of Evidence, he merely alleges a violation of state law which does not entitle him to federal habeas relief. *See* discussion *infra*. Further, the admission of the evidence did not render Petitioner's trial fundamentally unfair. As noted by the Michigan Court of Appeals, the officer testified about the need to protect confidential informants generally such that his statements did not constitute hearsay nor violate Petitioner's confrontation rights. Moreover, testimony that the police obtained a search warrant signed by a judge was relevant to explain the police officers' actions and did not unduly prejudice Petitioner, particularly given the significant evidence of guilt presented at trial. Petitioner has failed to establish that the admission of the disputed testimony rendered his trial fundamentally unfair. He is not entitled to relief on this claim.

24

### 3.    Police Tabulation Sheet

Petitioner also asserts that the trial court erred in admitting a police tabulation sheet listing items taken during the search of his residence. The Michigan Court of Appeals ruled that the tabulation sheet was not admissible under Michigan Rules of Evidence 803 (6) or (8), but concluded that the error was harmless because the police officers independently testified about the items found during the search such that the tabulation sheet was cumulative evidence. *See Finley*, 2004 WL 2381875 at *6-7.

Again, to the extent that Petitioner challenges this decision under the Michigan Rules of Evidence, he merely alleges a violation of state law which does not entitle him to federal habeas relief. *See* discussion *infra*. Moreover, the admission of the tabulation sheet did not render Petitioner's trial fundamentally unfair. The tabulation sheet was cumulative to the police officers' testimony describing the items seized from the residence. Moreover, given the police testimony describing the items seized from Petitioner's residence, as well as the evidence of guilt presented at trial, any error in admitting the tabulation sheet did not have a substantial and injurious effect or influence on the jury's verdict. *See Brecht*, 507 U.S. at 637. Habeas relief is not warranted on this claim.

### D.    Prosecutorial Misconduct Claim

Petitioner also asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by vouching for the credibility of the fingerprint expert. Respondent has not addressed this claim as a distinct issue from Petitioner's ineffective assistance of trial counsel claim, which Respondent contends lacks merit.

The United States Supreme Court has stated that prosecutors must "refrain from

25

improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that the prosecutor's remarks or conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id.* at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

Petitioner asserts that the prosecutor improperly vouched for the fingerprint expert by arguing that she was credible due to her experience and the fact that she had been promoted by her department. It is well-settled that it is improper for a prosecutor to express his or her own

26

personal beliefs as to a defendant's guilt or to express personal opinions concerning a witness's credibility. *See United States v. Young*, 470 U.S. 1, 9-10 (1985); *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002). Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charge against the defendant thereby infringing upon the defendant's right to be judged solely based upon the evidence presented and because the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own. *See United States v. White*, 58 Fed. Appx. 610, 617-18 (6th Cir. 2003) (citing cases).

The Michigan Court of Appeals addressed this issue in the context of Petitioner's ineffective assistance of counsel claims and determined that the prosecutor's conduct was not improper vouching. *See Finley*, 2004 WL 2381875 at *12. This Court agrees. The prosecutor's comments were based upon the testimony and reasonable inferences therefrom. A prosecutor has leeway to argue reasonable inferences from the evidence. *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). Moreover, a prosecutor may argue from the facts that a witness is (or is not) worthy of belief. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000). The prosecutor did not express a personal belief in Petitioner's guilt nor improperly vouch for the expert witness. Petitioner has failed to establish that the prosecutor's argument was improper or that it rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

E.     Evidentiary Hearing Claim

Lastly, Petitioner contends that he is entitled to habeas relief because the trial court failed to conduct an evidentiary hearing on his claims. Petitioner essentially claims that the trial court violated state law in denying his evidentiary hearing request. However, a state court's

alleged failure to properly apply state law or its own procedural rules, even if well-established, is not cognizable on federal habeas review. As noted, this Court's power to grant a writ of habeas corpus only extends to errors in the application of federal law. *See Estelle*, 502 U.S. at 67-68. Habeas relief is unavailable for errors of state law and a federal court will not review a state court's decision on a matter of state law. *See Lewis*, 497 U.S. at 780. Further, given the Court's determination that the foregoing claims lack merit, Petitioner has not shown the need for an evidentiary hearing.

## V.      Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for writ of habeas corpus.

**IT IS SO ORDERED**.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  June 30, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 30, 2008, by electronic and/or ordinary mail.

S/ Lisa Ware for William F. Lewis
Case Manager